UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-cr-00001-MMD-CWH |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** (ECF No. 140) |
| EUGENIV FLORIAN CIUCA, et al., | |
| Defendants. | |

Before the court is defendant Oana Maria Serban's Motion to Suppress All Evidence Seized as a Result of the Search for Yahoo! Email Online Accounts (ECF No. 140), filed July 12, 2018, and the government's response (ECF No. 142), filed July 13, 2018. The court also considered points and authorities contained in Serban's previous Motion to Suppress (ECF No. 93), filed May 24, 2018, the government's response (ECF No. 113), filed May 31, 2018, and Serban's reply (ECF No. 120), filed June 5, 2018.[1] Serban moves to suppress all evidence seized as a result of the search of email account Edelyn_marya@yahoo.com.

### I.   BACKGROUND

The government claims that in September 2017, defendants Ionut Bitere (Bitere), Eugeniv-Florian Ciuca (Ciuca), and Oana Maria Serban (Serban) traveled from Romania to the United States to commit ATM skimming and fraudulent cash withdrawals. According to the case agent, as described in the 36-page affidavit for the search warrant under consideration, they started their ATM skimming activities in Illinois and moved their way across the United States, arriving in Las Vegas, Nevada in November 2017. They conducted a series of ATM skimming and cashouts that targeted area credit unions, including OneNevada. On December 5, 2017, all

---

[1] When Serban's original motion was filed, (Mot. (ECF No. 93)), the email account had not yet been provided by Yahoo to the government, and so the court denied the motion to suppress without prejudice. (Order (ECF No. 124)). Subsequently, Serban refiled her motion to suppress by incorporating her previous arguments, which is now properly before the court.

three were arrested.  Serban was arrested with Bitere while the two were attempting to wire transfer cash proceeds to Romania.  Serban and Bitere had a large amount of cash, approximately $4,000 on their persons.

A search of defendants' hotel rooms and vehicle pursuant to a state-issued warrant revealed $32,000 in U.S. currency, handwritten notes of skimmed bank card PIN numbers, ATM skimming devices, ATM covert camera overlays, counterfeit bank cards, and other evidence tying the three to the ATM skimming scheme.  Detectives located three bundles of $100 bills in approximately $5000 stacks in luggage identified as belonging to Serban.  Additionally, Bitere admitted that he had been recruited by Ciuca in Romania to participate in the ATM skimming scheme.

Also seized in the hotel rooms were digital and electronic devices and storage devices.  Subsequently, a federal search warrant was issued to allow the search of the seized electronic devices.  That search revealed information which lead to the identification of the email account which is the subject of the current motion.[2]

## II.   DISCUSSION

Serban argues that there is insufficient information in the affidavit supporting the search of her online accounts to establish a connection with her, that probable cause is lacking, and therefore the evidence should be suppressed.  The government responds that the affidavit contains sufficient information to establish probable cause to search the email address.

### A.   The Sufficiency of the Search Warrant

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. Amend. IV.  The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v.*

---

[2] On January 3, 2018, a grand jury in the District of Nevada indicted defendants with the following crimes: Count 1 – Conspiracy to Commit Fraud and Related Activity in Connection with Access Devices (18 U.S.C. § 1029(b)(2)); Count 2 – Possession of Access Device-Making Equipment (18 U.S.C. § 1029(a)(4)); Count 3 – Possession of Fifteen or More Counterfeit or Unauthorized Access Devices (18 U.S.C. § 1029(a)(3)); Count 4 – Use or Trafficking of an Unauthorized Access Device (18 U.S.C. § 1029(a)(2)); and Counts 5-9 – Aggravated Identity Theft (18 U.S.C. § 1028A).  On April 25, 2018, the Grand Jury returned a superseding indictment that added a Count 10 – Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(a)(2)(A) and (h)).

2

*United States*, 389 U.S. 347 (1967). It protects "people not places." *Id.* Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

As a general rule, a search warrant may only issue upon a showing to a neutral magistrate that probable cause exists to support the proposed search. The Supreme Court has described "probable cause" as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The magistrate judge must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause. *Giordenello v. United States*, 357 U.S. 480, 485-86 (1958). Probable cause is to be determined on the basis of the "totality-of-the-circumstances." *Gates*, 462 U.S. at 230. A magistrate judge's determination of probable cause is accorded significant deference. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). The issuance of a search warrant is upheld "if the issuing judge 'had a substantial bases' for concluding [that] probable cause existed based on the totality of the circumstances." *United States v. Ewing*, 588 F.3d 1218, 1223 (9th Cir. 2009).

By authorizing the seizure of electronic devices in the hotel room, this court has already determined that there was probable cause to believe the electronic devices would contain evidence of the alleged crimes. Here, one of those searched devices contained information regarding email account edelyn_marya@yahoo.com.

The agent's affidavit to support the search warrant of the subject email account describes the WhatsApp chats found on Bitere's phone. The agent indicates that WhatsApp is frequently used by individuals engaging in crime due to its strong encryption properties. The agent attributes messages sent by "Jan Nouuu" to Ciuca based on flight records in Ciuca's name, and shipping labels showing "Jan Nouuu" sending a shipping slip to Bitere in the name of Ciuca's alias used for the Greek passport and Saturn that had been tied to Ciuca in the affidavit. Bitere and Ciuca exchanged addresses of the OneNevada branches where ATM skimming and cashouts occurred. They also sent photos of ATMs at the OneNevada branches, and a video demonstrating how to operate a deep-insert ATM skimmer. The affidavit described how, in the midst of

exchanging pictures and addresses of the OneNevada ATMs and skimming equipment, Ciuca and Bitere exchanged information about an email address, cortes1992@mail.com, and exchanged the password for the account. That exchange occurred just as Bitere and Ciuca exchanged a photograph of a computer screen with apparent account information and also mentions "23" in apparent reference to the 23 accounts compromised from OneNevada. That also occurs as the two exchanged photos of an ATM skimming device and a memory storage device--Bitere advised in the message that he had to "buy another memory card as one is full of pins."

The agent also noted that Bitere sent Ciuca a photograph of a TeamViewer screen, which is a software program that allows a person to remotely log into another computer. The agent stated that, in his training and experience investigating crimes utilizing the internet, co-conspirators use a technique to store stolen or contraband information in a draft email, and then they share access to that email account.

According to the agent, elsewhere in the WhatsApp messages Bitere appears to be using this technique in relation to edelyn_marya@yahoo.com, the subject of the current motion, because of the following exchange. Bitere communicates with another WhatsApp user who used the moniker "Oannna." Serban's first name is Oana and the "Oannna" WhatsApp account bears a profile picture of a woman whose general physical characteristics match Serban, although the agent admits that due to the quality of the picture, a conclusive identification cannot be made. The chats speak to Oana by name, for example, "what are you doing oana." Based upon the relationships between the defendants, it is reasonable to conclude that Serban is the "Oannna" WhatsApp user communicating with Bitere.

Because they are translated from Romanian to English using a Google translator, the content of all of the Bitere-Serban chats is confusing. It is nevertheless clear that they discuss entry (of information) on a laptop ("oana to enter on my laptop not on tel"), and saving information to a folder. They discuss prices of "500 euros" and "250 euros," which according to the affiant is consistent with the sale of stolen credit/debit card profiles trafficked over the internet. They reference a mail.com account, likely that was sent between Ciuca and Bitere

which referenced the 23 compromised accounts. Finally, they contemplate the use of email account Edelyn_marya@yahoo.com in the process of these communications.

Serban argues that the chats do not explicitly implicate her in the skimming scheme. Additionally, she argues that there is no detailed description of how Serban joined the conspiracy between Bitere and Ciuca, and that the affidavit only establishes her association with them. These may be valid concerns for Serban, but the question is whether there is a fair probability that the evidence of criminality will be located in the place to be searched, that is, the email account.

Considering the training and experience of the investigating agent regarding the transmission of stolen credit data and the similar scheme he had observed for the cortes1992@mail.com account, Serban's on-going relationship with Ciuca and Bitere in supporting the skimming scheme, the context of the WhatsApp chats, and the totality of the circumstances as set forth in the affidavit, it is reasonable to infer that it is fair probability that evidence of the ATM skimming scheme would be contained in the email account. Accordingly, probable cause exists, and the court finds that Serban's Fourth Amendment rights were not violated.

### B. Serban's Request for an Evidentiary Hearing

Serban possesses evidence that Ciuca declared $10,500 when he entered the United States. She requests an evidentiary hearing on the present motion because she believes it is necessary to understand the origin of the cash in this case, and that her association with large sums of cash is not probable cause a crime has been committed. Serban also desires an evidentiary hearing to gain an understanding of why she was initially arrested while attempting to wire cash to Romania, but was subsequently released, arguing that probable cause must be lacking in her case.

Evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required. *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir. 1974), cert denied, 419, U.S. 1024 (1974). Here, Serban's explanation of the origin of $10,500 cash does not explain the nearly $40,000 cash seized. Her release from custody after being arrested does not impact the

validity of the affidavit before the court.  More importantly, she ignores the discovery of handwritten notes of skimmed bank card PIN numbers, ATM skimming devices, ATM covert camera overlays, counterfeit bank cards, and other evidence tying the three to the ATM skimming scheme, as well as Bitere's admission that he had been recruited by Ciuca in Romania to participate in the ATM skimming scheme.  Nor do the facts she offers inform the question of whether the email account contains evidence of a crime.  Under these circumstances, Serban offers no contested facts which influence the question of whether there is probable cause to believe the email account contained incriminating evidence, or that would contest the validity of the search of the email account.

### III.  CONCLUSION

IT IS THEREFORE RECOMMENDED that defendant Serban's motion to suppress evidence (ECF No. 140) be DENIED.

### IV.  NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: October 9, 2018

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE